# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MARTEZ MCNABB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:18-cv-0067 |
| ) | Judge Aleta A. Trauger |
| JEFF LONG *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

The plaintiff Martez McNabb, proceeding *pro se*, filed a civil complaint against defendants Sheriff Jeff Long and Lieutenant Vandenbosch of the Williamson County Sheriff's Office. (ECF No. 1.)[1] Also before the court is the plaintiff's application to proceed *in forma pauperis*. (ECF No. 5.) In addition, his complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. APPLICATION TO PROCEED AS A PAUPER

Under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it appears from the plaintiff's submissions that the plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance, the application (ECF Nos. 2, 8) will be granted.

---

[1] On the same day that Mr. McNabb filed his complaint, another inmate at the Williamson County Sheriff's Office jail, Jason B. Johns, filed a substantially similar complaint. *See Johns.v. Long,* 3:18-cv-0064 (M.D. Tenn.) (Trauger, J.).

However, under § 1915(b), the plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, the plaintiff will be assessed the full $350 filing fee, to be paid as directed in the accompanying order.

## II. INITIAL REVIEW

### A. **Factual Allegations**

In his complaint, the plaintiff recites a long list of ills that he alleges plague the Williamson County Sheriff's Office (WCSO) jail. Specifically, the plaintiff alleges that he is made to watch a Prison Rape Elimination Act (PREA) video at least twice daily for an hour at a time. (ECF No. 1 at Page ID# 10.) The plaintiff alleges that there are security cameras over the toilets in several of the bathrooms in the facility. (*Id.*) He asserts that this violates his right to privacy. (*Id.*) The plaintiff alleges that they, which the court will presume means the defendants, took away outdoor recreation time. (*Id.*) Further, he alleges that in 2018 the WCSO jail initiated a policy which prohibits inmates from working out at all no matter where in the facility, including the day room and prisoner cells. (*Id.*) The plaintiff alleges that the absence of opportunities for recreation and exercise causes him to lash out at staff, other inmates and his family and creates, for all intents and purposes, a jail in which all of the prisoners are in segregation. (*Id.* at Page ID# 11.) The plaintiff alleges that prisoners are required to agree to jail policy without first having a chance to read it, and if they do not agree to the policies, they are locked out of the "kiosk" system, which prevents them from ordering from the commissary, filing medical requests, etc. (*Id.* at Page ID ## 10-11.)

The plaintiff alleges that the WCSO jail does not honor or acknowledge Islamic beliefs and Seventh Day Adventists must eat meat or starve. (*Id.*at Page ID# 11.) Further, the plaintiff alleges that, "for an inmate to attend a church service he or she has to be approved . . . and put on a list to attend then only three . . . inmates per pod are allowed to attend the service . . .". (*Id.*)

The plaintiff alleges that inmates do not receive a physical upon entering the facility, which means that the plaintiff does not know what kinds of health conditions to which he might be exposed. (*Id.* at Page ID# 12.) He alleges that they cut hair with unclean clippers, pass nail clippers around the facility, and make the prisoners share towels, which required the plaintiff to remove pubic hair from his face towel before he used it. (*Id.*) The plaintiff alleges that the facility charges for medical visits, prescription and over-the-counter medicine, lab work and imaging. (*Id.*) Additionally, inmates are charged a fee to order from the commissary and pay excessive prices for items bought at the commissary. (*Id.* at Page ID# 13-14.) The plaintiff alleges that the WCSO shows favoritism to inmate workers by allowing them to buy thermal shirts while the other inmates freeze. (*Id.* at Page ID# 12.)

The plaintiff alleges that laundry is washed without any soap or bleach, and that clothes are returned to inmates "smelling like burnt dirt and funk," which is unsanitary. (*Id.*) Additionally, the plaintiff alleges that sometimes the dryer catches fire, which is a hazard. (*Id.*) The plaintiff alleges that the jail facility is covered with mold, rust, dirt, graffiti, insects, and rodents. (*Id.* at Page ID# 13.)

The plaintiff alleges that, on January 1, 2018, the facility tested the fire alarm, but inmates were locked in their cells. (*Id.*) He alleges that the WCSO jail fails to follow proper safety protocol. (*Id.*)

Finally, the plaintiff alleges that the WCSO jail fails to keep up with inmate time and that, as a result, inmates are serving more time than is required by the judgment of conviction. (*Id.* at Page ID# 14.)

As relief, the plaintiff seeks money damages and an order directing the WCSO jail to initiate new policies. (*Id.*)

### B. Standard of Review

If an action is filed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as construed by *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that "the dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under [§ 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)"). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement

of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

The court must construe a *pro se* plaintiff's complaint liberally, *Boag v. McDaniel*, 454 U.S. 364, 365 (1982), and accept the plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *see also Williams*, 631 F.3d at 383 (recognizing that "[p]ro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." (internal quotation marks and citation omitted).) *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The court is not required to create a claim for the plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir. 1975); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her").

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### C. Discussion

#### 1. Preliminary Considerations

The plaintiff's complaint is replete with facts specifying allegedly unconstitutional behavior to which inmates are subject, but he consistently fails to identify whether he was personally subjected to the unconstitutional behavior about which he complains.

The plaintiff lacks standing to assert the constitutional rights of other prisoners. N*ewsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, the plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978). As such, to the extent possible, the court will construe the plaintiff's allegations to mean that he was personally subjected to the allegedly unconstitutional behavior about which he complains.

#### 2. Defendants Long and Vandenbosch

Other than naming defendants Long and Vandenbosch, the plaintiff entirely fails to identify them in the body of the complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002)

(dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Because the plaintiff fails to satisfy the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against defendants Long and Vandenbosch. However, construing the complaint liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the court will find that the plaintiff intended to allege that defendant Long, as Sheriff of Wilson County and the chief policymaker for the jail, established polices that deprived him of a constitutional right. A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1974)). As such, the court will consider whether the plaintiff's allegations are sufficient to demonstrate that the sheriff has established a policy or custom which caused plaintiff to be deprived of a constitutional right.

### 3. Constitutional Violations

The only allegation that relates to a policy decision is the plaintiff's allegation that the WCSO jail has a policy of denying inmates outdoor recreation and exercise.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v.*

7

*Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Although "[t]he Sixth Circuit, applying Supreme Court precedent, has recognized that outdoor recreation, in some undefined form and amount, is necessary for inmates' well-being," *Jones v. Stine*, 843 F.Supp. 1186, 1193 (W.D.Mich. 1994) (citing *Walker v. Mintzes*, 771 F.2d 920, 927–28 (6th Cir.1985)), there is no applicable precedent requiring any minimum amount of outdoor recreation for prisoners. *See Argue v. Hofmeyer*, 80 Fed.Appx. 427, 430 (6th Cir.2003) (observing that the Sixth Circuit has never set a minimum amount of outdoor time for inmates). The Sixth Circuit has held simply that "'a total or near-total deprivation of exercise or recreational opportunity, without penological justification,'" impinges on an inmate's Eighth Amendment right, because "'[i]nmates require regular exercise to maintain reasonably good physical and psychological health.'" *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir.1995) (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir.1983)).

The plaintiff alleges that, in 2018, the WCSO jail established a policy that prohibited

inmates from working out and deprived them of outdoor recreation. At this juncture, the plaintiff's allegations are sufficient to warrant service of the complaint against defendant Long.

4. Other Constitutional Claims

As noted above, the plaintiff has failed to allege that defendants Long and Vandenbosch engaged in any activity at all, let alone activity that deprived him of a constitutional right. Nevertheless, even if he had alleged that the defendants' conduct deprived him of a constitutional right, his claims would still have to be dismissed.

The plaintiff complains about the cost of adding money to his commissary account and commissary pricing; however, commissary pricing does not implicate constitutional concerns. *See e.g. Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir.1996) (concluding that "we know of no constitutional right of access to a prison . . . snack shop."); *Dowdy v. Albemarle Charlottesville Regional Jail*, 2011 WL 5075089 (W.D.Va. Oct.25, 2011) (complaint of price gouging including $1.00 for packet of Ramen Noodles failed to state a claim), *Newell v. Ruth*, No. 1:11-cv-86, 2014 WL 4411045, at *9 (E.D. Tenn. Sept. 8, 2014) (neither the fee for the commissary account deposit nor commissary prices implicate an inmate's constitutional rights). Consequently, the plaintiff cannot state a claim for violation of his constitutional rights based on commissary pricing or fees.

The plaintiff complains about the presence of video cameras in the men's restrooms. In *Garrett v. Thaler*, 560 F.App'x. 375 (5th Cir. 2014), the Fifth Circuit held that an inmate failed to state a constitutional claim when he alleged that "video recording cameras in the restrooms, showers, and dressing areas of the prison–as well as female officers' viewing of male inmates both in those areas and on the cameras–violate[d] his expectation of minimal privacy under the Fourth Amendment." *Id*. at 380. The court held that:

9

> the magistrate judge did not err in dismissing Garrett's privacy arguments for failure to state a claim. We have previously held that prisoners have a minimal right to bodily privacy. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). But, even if a prison regulation "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). To determine the reasonableness of a prison restriction, we consider the four factors outlined by the Supreme Court in *Turner*: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of justifying that right that remain open to prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) "whether the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254 (internal quotation marks omitted). . . . [W]e rejected in *Oliver* a similar challenge on the grounds that "constant surveillance, even cross-sex surveillance, of prisoners is constitutional because it is reasonably related to the penological interest of maintaining security." *Oliver*, 276 F.3d at 745–46. The court found that, as here, comprehensive surveillance by all guards increases the overall security of the prison, minimizing inmate-on-inmate violence and sexual assaults. *Id.* at 746. Moreover, requiring only male guards to supervise inmates or doing away with security cameras in the bathroom and dressing areas could require the prison to increase staffing or reassign a large percentage of its staff, or both, and there is no readily identifiable alternative that would impose only *de minimis* expenses in terms of inmate security, staffing costs, or equal employment opportunities. *Id.* We have subsequently affirmed this position. *See, e.g., Mitchell v. Quarterman*, 515 F.App'x. 244, 247 (5th Cir. 2012) (unpublished), and several other circuits have likewise upheld cross-sex surveillance, *see, e.g., Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir.1995) ("If only men can monitor showers, then female guards are less useful to the prison; if female guards can't perform this task, the prison must have more guards on hand to cover for them."); *Timm v. Gunter*, 917 F.2d 1093, 1101–02 (8th Cir. 1990) (explaining that constant visual surveillance by guards of both sexes is a reasonable and necessary measure to promote inmate security); *Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (holding that female correctional officers' presence around naked prisoners did not violate their privacy rights).

*Garrett*, 560 F.App'x at 380-81. The Fifth Circuit affirmed the district court's finding that "the placement of recording cameras in the restroom, shower, and dressing quarters in men's prisons" did not violate the plaintiff's Fourth Amendment right to privacy. The court finds this reasoning compelling.

With respect to his allegations regarding "freedom of religion," the plaintiff does not

even suggest that he possesses a sincerely held belief in even one of the faiths that he alleges has been burdened—Muslim, Seventh Day Adventist or Christian. *See Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987) (holding that to establish that his right to freely practice his religion has been violated, a prisoner must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) defendants' behavior infringes upon this practice or belief.) Further, the plaintiff's laundry list of allegations— that he is forced to watch the PREA video at least twice a day, that he must agree to jail policy before reading it, that inmate workers are favored, that during a test of the fire alarm prisoners were confined to their cells, and that the jail fails to keep proper track of prisoners time served and credits received—fail to state any claims for relief because they are conclusory, *See Iqbal*, 556 U.S. at 678-69; *Twombly*, 550 U.S. at, 555, and are insufficient to even "suggest an entitlement to relief" *William*, 631 F.3d at 383. Moreover, the plaintiff does not allege that the defendants were deliberately indifferent to his health or safety or that the events about which he complains personally caused him, or placed him at risk of suffering, any harm. *See Farmer*, 511 U.S. at 828–29 (explaining that when alleging that his safety was endangered due to the conditions of confinement, a plaintiff can successfully bring a § 1983 claim only by showing that the prison officials acted with "deliberate indifference" to [his] health or safety.)

Finally, even accepting as true the plaintiff's allegations that various conditions within the WCSO jail violate his Eighth Amendment rights-including his claim that the prison laundry is not properly cleaned, that incoming inmates are not given a physical examination, that hair cutting shears and nail clippers are shared, and that the jail is covered in mold, rust, dirt, graffiti, insects and rodents-the plaintiff still fails to state cognizable claims for relief. "[P]rison officials

11

must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *See Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "To the extent that [ ] conditions [of confinement] are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. The plaintiff's allegations do not suggest "serious deprivation of basic human needs" or "the wanton and unnecessary infliction of pain," that constitutes cruel and unusual punishment. *Id*. The plaintiff does not allege that he has contracted any illness or disease based on the alleged unsanitary practices of the jail. As such, his conditions-of-confinement claims must be dismissed for failure to state a claim upon which relief may be granted.

### III. CONCLUSION

For the reasons set forth herein, the plaintiff has sufficiently stated a claim for violation of his Eighth Amendment rights against defendant Long for establishing a policy or practice at the WCSO jail of prohibiting inmates from enjoying outdoor recreation and exercise. The plaintiff has failed to state any claims against defendant Vandebosch. The complaint shall be referred to the Magistrate Judge for further proceedings as described in the accompanying order.

An appropriate order is filed herewith.

ENTER this 22nd day of May 2018.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE